Birchard, J.
This is a bill seeking to reverse a decree of this court, rendered in 1842. The case is reported in 11 Ohio, 125] *455. It contains fifteen assignments of error, of which we shall notice but those which appear to us well assigned. Among these is the sixth, which in substance is, that A. Pence, whose testimony was received on the former hearing, was incompetent by reason of interest.
This witness was a party to the suit, but had filed an answer, disclaiming all interest therein, prior to his examination. Upon the circuit, I was for ordering out his deposition, but in bank, finally assented to the united opinion of my brethren, that his interest, as between the parties, was equally balanced, upon the hypothesis that the money secured by mortgage, and for which he would be liable, in the event of the then complainant’s success, was equal to any sum which said complainants might recover; and that, if this were not so, it was incumbent upon the party taking the objection to show the inequality of interest, and that the balance was against them. On the former bearing, there seems to have been an oversight. An allegation of the bill, stating the value of the premises in dispute, could not have been noticed.
Wood’s heirs, who were complainants, in the event of their failure, upon their own showing, would be entitled to recover damages of their witness, equal to the entire value of the land in controversy. They even thought the rents and profits, received by him, during his possession of the premises, were more than sufficient to satisfy all claims that he ever had upon it. They also state, that the land was worth more than $1,000.
On the other hand, if Dille et al. failed in their defense, their claim against Pence would be limited to the moneys secured by the mortgage to Brice, amounting to $641.
The condition of the witness would be bettered, by their success, in a sum equal to the difference between $1,000 and $641. For this reason, the decree should be set aside.
The thirteenth assignment is, in substance, that there is a variance between the allegations in the bill and the proof. The bill alleges that Woods assigned the contract to Pence, by an indorsement, *absolute in its terms, “ but merely in trust for the benefit of said widow and children ; and that it was received by Pence upon the express understanding that, so soon as the title could be secured, he would make provision for the support of the *127 widow, and convey to said children their respective proportions of the land.”
The proof was, that at the date of the assignment, Woods lived on the land with Pence, to whom he was indebted, and requested Pence to make arrangements to pay the balance due upon it; that ■he proposed to assign the title bond to him, and when the sons, John and William, came of age, they were to repay him, and to have the land, and to pay each of the girls something; and “the widow was to have her support off the lands.” “ The assignment (says Pence) was made upon these conditions.”
The bill alleges an agreement to convey to each of the children. The proof sustains an agreement to convey to two only. By the allegata of the bill, all the complainants had a joint right to pursue an interest in the land, and to have a joint decree for the title. By the proof, the girls were to have a claim for something against John and William, who alone were to have the title. The point was not particularly brought to our attention on the original hearing, and the question escaped a critical examination. It is, nevertheless, fatal to the decree. The proofs and allegations, in chancery as well as at law, must correspond.
The evidence of Armstrong does not, in this respect, aid that of Pence. Nor did the facts, which showed a right in John and William only, justify a decree of title in favor of the other heirs of Woods.
Another exception is, that the decree makes no provision to secure Dille, in whatever equity Pence may have had in the land, at the date of his mortgage. As the case stood, we were not aware that he had any equitable claim, nor are we now sure that he had. After the assignment by Woods to him, he occupied and enjoyed the premises, and received the rents and ^profits, until the date of his mortgage; and since then, he and those claiming under him, have done the same. If an account had been demanded, the probability is, that a large balance would have been due to the heirs of Woods, at the date of the mortgage. The principle contended for by counsel, that the mortgage would secure to the mortgagee whatever equity the mortgagor had in the premises, although failing to vest the legal title, is undoubted. Should a further hearing disclose anything to make this principle available to the present complainants, our former decision will not be found to contain anything in their way. Decree reversed, and cause remanded.